Hiam v. Homeaway.com, 17-1898. Good morning, Your Honors. John Traficante for the appellant, Peter Hiam. This is a case involving a website operator, Vacation Rentals by Owner, VRBO, owned by the defendant, Homeaway.com. Believe me, we've read the briefs. We're quite familiar with the facts. Do you want to get to the legal issues? I do. From a plaintiff's perspective, essentially the two cruxes of this case involve the two promises that escape Communications Decency Act immunity, as we alleged. And the first promise was embodied in the text of a document labeled guarantee. And it's the plaintiff's position that the regulations passed by the Attorney General, pursuant to 93A, which are triggered by the use of the word guarantee in that text, that those regulations structure the legal interpretation of the document. And once they structure the interpretation of that document, there is a warranty or representation being made by the defendant that its tens of thousands of listings, property listings, are legitimate and available for rent. So you are saying that notwithstanding the disclaimers on the site, which say that you have to do your own checking in effect, notwithstanding any of those disclaimers, that once they use the word guarantee, that in this particular context, they are in fact guaranteeing the efficacy of every single listing? They are issuing a warranty in the form of a guarantee. And if they, in another document, because they are on two different documents, the answer to the question is yes or no. If they state a disclaimer of warranty in a different document in their terms and conditions, they are either contradicting themselves, which itself would confuse a consumer and violate the guarantee regulations, or more coherently, the terms and conditions disclaimer has to be read together with the guarantee. Well, was the guarantee a very limited one, up to $1,000? If you were dissatisfied with whatever happened and you did certain things, and they did certain things, you might be entitled to $1,000. It wasn't a guarantee of satisfaction, per se. It had nothing to do with satisfaction. It was a guarantee or a warranty, pursuant to the regulation, that the listings were legitimate, that's to say they existed, and that they were available for rent. And yes, the remedy under the guarantee was quite limited to $1,000. But our claim is not for the $1,000. Our claim is that the guarantee itself is a deceptive practice. It's misleading consumers. Did your client actually book through VRBO? I'm sorry, I didn't hear the question. Did your client actually book through VRBO? Book through. The client communicated through, actually the client's son, communicated with the fraudsters through VRBO, received information as to the bank account to send the deposit through VRBO, and then sent that deposit before it learned of any other website that the fraudsters were operating. I think there's a separate mechanism that VRBO has for a customer or user to book a site in a different way, more immediately connected to VRBO. Yes, they booked through VRBO. Isn't that the way VRBO gets its money? No, it gets its money, in this case and in general, although I'm sure my brother can be more precise about it, by charging fraudsters, for example, and legitimate property owners, a fee, in this case I think it was something like $800 and $900 to the fraudsters, for posting listings on their site, for running the listing. I thought there were certain preconditions to the eligibility for the refund promised under the guarantee, that you had to be a registered traveler, that the district court focused on the wire transfer, and you make a good point in your briefs that that may not be the type of thing here, but there was also a seven-day requirement, and it seems undisputed you missed the seven days and have made no argument that the seven days is unenforceable. Well, there's also the issue of the technical application or compliance with the guarantee is several fold. First of all, we're not trying to enforce the extremely limited protection in the guarantee. We're not suing them for the $1,000, number one. So you're saying once they use the word guarantee, whatever conditions they put on that, we forget about those. They use the magic word guarantee. We should therefore read that under Massachusetts law as a warranty, and they breach the warranty. Well, it depends on what the plaintiff wants to allege. We're alleging fraud. We're alleging that a guarantee issued to consumers in this form is a warranty, and as your honors are aware, the trial judge found that those regulations are not applicable to the text on which our claim is based, and so we don't have a discussion by the trial judge of how to interpret the regulation, and so I've offered that in my brief. Your claim has nothing to do with $1,000. What you're saying is that because of the way the Massachusetts statutes work and the use of the word warranty, you're entitled to get your money back because they committed fraud. They committed a fraud, and it's not an abstract proposition that there's the magic word hanging out there, guarantee, and my client should be able to collect his $48,000 or his $52,000 back. The point of the guarantee is that they're making a warranty. The point of the warranty is that a consumer can assume, should assume, that this website is doing something, has a material basis, or has a basis for its representation, which is a representation of material fact according to the text of the regulation. Even when they say they're not doing that? Well, instead of saying they're not doing that, they're saying they're not doing that over here on the left side of their brains, and over on the right side of their brains, they're guaranteeing every listing. No, they're not. I don't think. What they're saying is we have a very limited warranty that we give to you, up to $1,000, if certain things happen and we do this investigation. It doesn't seem to me, from looking at these documents and what was available to your client, that they're saying that we are telling you that each one of these listings is accurate. There's ample information saying you have some duty to inquire. I think this is part of the confusion that the two documents that they're offering to users and consumers creates. On the one hand, I acknowledge that they have a disclaimer of warranty in the terms and conditions. On the other hand, they have a guarantee document, a separate text, which I will point out has a provision that says, if this guarantee document, this separate agreement, has a term that conflicts with anything in the terms and conditions, the guarantee document overrides. Again, suppose the guarantee had simply said, this was the whole thing, it simply said, if it turns out that the place you rent doesn't exist or is otherwise materially different from what was represented to you, we'll give you $1,000, period. If they use the word guarantee... So it all hinges on using the word guarantee. It does hinge on it. Yes, yes, it does. The reason why I was smiling in response is it hinges on the word guarantee because there is an attorney general regulation, there are three of them, that go to great lengths to protect consumers when businesses in the consumer context use the word guarantee. So yes, it hinges on the use of the word because the attorney general under 93A has taken great pains to protect or, if you will, define and structure the use of that word. And what specific language in the regulations are you relying on? I'm sorry? What's your best language in those three regulations? They're all good, Your Honor. I would say the best language is, first of all, the definition of a deceptive warranty, which indicates that it can be created, a warranty or guarantee can be created by the use of the term guarantee. Does it say warranty or guarantee? They're synonymous for purposes of the regulatory structure. They're the same. The key to our claim, and I have very little time left, I wanted to turn to the other issue of the investigation and the violation of Rule 56F. You better use your time to convince us that the warranty and the guarantee have effect. Well, the other regulation that I think the court needs to carefully parse is deceptive advertising of guarantees, which is on page 22, it's extended quotation on pages 22 and 23 of my initial brief. Thank you very much, Your Honors. I appreciate it. Thank you. Mr. Albano. May it please the Court. May I start, please, addressing the 93A regulation, because that regulation, in fact, undercuts the argument that the plaintiff has made. 940 C.M.R. 3.03.1.b provides that a guarantee in advertising should clearly disclose the manner in which the guarantor will perform, and then the regulations give some examples. Examples of this would be repair, replacement, refund. Another example of a guarantee in the Attorney General's regulations is a satisfaction or your money back guarantee, a form of a refund. They even give a more specific example, that perhaps one would give a 12-month guarantee of a package of batteries. The batteries only last, it turns out, six months. The regulations require a refund of 50% of the sales price of the battery under those circumstances. So the argument that I'd suggest is very central to the plaintiff's claim here, that, as is said at page 23 of their brief, under Massachusetts law there is no such thing as a guarantee offered to a consumer that is just a promise to refund. That assertion, we suggest, is incorrect. Not only is there no case law that says so, but the Attorney General's regulations undercut the argument. If I may also just step back a little beyond the Attorney General's regulations, from sort of a common sense standpoint, the argument that that basic rental guarantee is a fraud depends upon believing that one would read a guarantee that says I will give you 2% of what you pay for this rental if I later determine in my discretion that there has been an instance of Internet fraud and if you satisfy all of the conditions of the guarantee. The theory of the case is that under those circumstances a fraud has been committed and a reasonable consumer would therefore enter into the transaction securing the knowledge that they get 2%, in this case, of the payment back. For that reason, essentially, we argue, and the district court, we say, that no reasonable person would interpret the basic rental guarantee in that fashion. You're basically arguing that the limited nature of whatever they promised would lead a reasonably astute consumer to understand that they were on their own in deciding to make the deposit, as was done in this case. Yes, Your Honor, there's no conflict between the basic rental guarantee and the terms and conditions. They can be read together, they should be read together. The terms and conditions give a litany of warnings about the consumer needing to do his own due diligence. There is no implied or expressed warranty. I won't go through them all here, but it's a long litany of warnings and disclaimers. The basic rental guarantee does not contradict those terms and conditions. It merely provides a circumstance in which you may be entitled to get $1,000 back if, in its discretion, HomeAway finds that there has been Internet fraud. That example you just gave with the 2% refund, wouldn't that run into the provision, somewhere in the regs, something B, that prohibits guarantees that because of the conditions are illusory? And it seems to me 2% may fall into that category of being an illusory guarantee. Well, I would suggest on that one, Your Honor, that you go on this vobo.com website. There are scores, hundreds of thousands of rentals. In some of those cases, a $1,000 guarantee possibility refund is quite meaningful. In others, it is less meaningful. So you're not defending the 2%, but you're saying the 1,000 is not the 2%? It happened to be 2% here for Mr. Haim to say, I was tricked by the basic rental guarantee into sending $46,000 to a stranger. He has to say, it was reasonable for me to send that, secure in the belief that I had an opportunity to get $1,000. Suppose all the properties on VRBO were all minimum of $50,000. Then the $1,000 would be 2% in all instances, and you'd have the question, it seems to me, as to whether that is an illusory condition that's prohibited by the Massachusetts statute. I suppose it is. Whereas if every property was $900 and less, obviously no one could make an illusory argument. So what do we do when you have $1,000 and you have properties that fall into both categories? Why don't we say that, well, we decide for each category whether it was an illusory promise, because they know that the price, VRBO knows the price. I would suggest that that case would turn not just on the amount offered, whether $1,000 or $10,000, and here, of course, as the record shows, there was an opportunity to purchase additional coverage up to $10,000. But to answer your question, I would say one must look then at the terms of the guarantee as a whole, not to isolate the amount of money offered, but to look at the terms of the guarantee as a whole, read in light of the terms and conditions, and then make a determination as to whether it is illusory or not. I would add, if I may, one other fact in this case is that our Rule 56.1 statement in this case called out and challenged an allegation found in the plaintiff's complaint. If you look at paragraph 87 of the plaintiff's complaint, well, I can quote it exactly. It says, the basic rental guarantee expressly guarantees each and every listing posted on its website and that the plaintiffs, there were two below, were aware of this guarantee before they wired any funds in connection with the jewels of Belize transaction. That 56.1 statement was not disputed below. There was a separate statement filed by the plaintiff dealing with additional facts. There has never been, not in deposition testimony, not in an affidavit, not in any filing, a submission of evidence that the plaintiff read, ever laid eyes on, the basic rental guarantee at any time in this transaction. That's a little bit of an odd argument for an internet company to make because usually you're standing before us saying that consumers are bound by all those terms and conditions that we know nobody ever looks at. So it sounds like you want your cake and eat it too. Well, I think if we were faced with a contract claim here, and we are not, then I think that would be a more than fair point. But in a circumstance in which the plaintiff is seeking to recover for fraud and Chapter 93A violations, and there is a necessity of proof of a causal link between the defendant's conduct and the injury, that this stands as an independent grounds on which the district court's judgment below can and should be affirmed. I assume that if we were faced with a somewhat different situation where the money was sent to your client who then sent it, then you would not be here making this argument. It would be a vastly different set of facts. That's true. The record shows here, by the way, that the transaction was a contract between the plaintiff and Jules of Belize. HomeAway was not a party to that contract, was never paid a dime by the plaintiff. Did they get the money by a fee, a flat fee, or a percentage of the deal? Does the record show? I don't believe the record shows, so I probably shouldn't say. I understood it was a fee and that it's different today than it was at the time this case arose. Have you given up your CDA preemption argument as to these particular claims? No, Your Honor, we have not given them up. I think that, may I say this? I think the district court's approach to addressing them as a matter of state law was a wise way of doing it and probably wiser than our initial approach. Okay. Thank you. Thank you.